

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| Peter J. Martinez<br>Assistant United States Attorney<br>Peter.Martinez@usdoj.gov | 36 South Charles Street<br>Suite 400<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4984<br>MAIN: 410-209-4800<br>FAX: 410-962-0716 |

November 29, 2023

**BY EMAIL**

Paul D. Hazlehurst, Esq.
Hazlehurst Law
11350 McCormick Road
Executive Plaza, Suite 705
Hunt Valley, Maryland 21031
Email: paul@lawpdh.com

   Re: <u>United States v. Barak Olds</u>, Criminal No. JKB-22-439

Dear Counsel:

   This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to your client, Barak Olds (hereinafter the "Defendant"), by the United States Attorney's Office for the District of Maryland. If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by close of business on **December 1, 2023**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

   1. The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offenses

   2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows.

<u>Count One: Racketeering Conspiracy, 18 U.S.C. § 1962(d)</u>

That from in or about 2014 continuing until on or about the date of the Indictment, in the District of Maryland,

   a. an enterprise existed as alleged in the Indictment;

   b. the enterprise affected interstate or foreign commerce;

Rev. August 2018

    c. the Defendant was associated with or employed by the enterprise;

    d. the Defendant knowingly and willfully conspired with one or more persons to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity; and

    e. in this case, the affairs of the enterprise, and the pattern of racketeering activity in which it engaged, included a conspiracy to feloniously, willfully with deliberately premeditated malice kill and murder F.T., L.H., and D.C., in violation of Maryland Code, Criminal Law § 2-201(a)(1) and the common law of Maryland, and punishable pursuant to Maryland Code, Criminal Law § 1-202.

## Penalties

3.     The maximum penalties provided by statute for each offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Max. Prison | Supervised Release | Max. Fine | Special Assessment |
|---|---|---|---|---|---|---|
| One | 18 U.S.C. § 1962(d) | N/A | Life | Max: 5 years | $250,000 | $100 |

    a.     *Prison*: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.     *Supervised Release*: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c.     *Restitution*: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.     *Payment*: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.     *Forfeiture*: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f.     *Collection of Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a

Rev. August 2018

schedule of payments, the Defendant agrees that: (i) the full amount of the fine or restitution is nonetheless due and owing immediately; (ii) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (iii) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4.  The Defendant understands that, by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a.  If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the

Rev. August 2018

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" provisions below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant also will be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that, if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991–98. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

  7.  This Office and the Defendant agree to the following applicable sentencing guidelines factors:

Rev. August 2018

4

   a. The parties agree and stipulate that pursuant to U.S.S.G. § 2E1.1(a)(2), the offense level for racketeering conspiracy is the greater of offense level 19 or the offense level applicable to the underlying racketeering activity. Pursuant to U.S.S.G. § 1B1.3, the underlying racketeering activities in this case involve acts, committed, aided, abetted, counseled, commanded, induced, or willfully caused by the Defendant, as well as all those acts reasonably foreseeable to him in furtherance of the jointly undertaken criminal enterprise, and include, among others: Murder, chargeable under Md. Code Ann. Crim. Law §§ 2-201 and 2-204 (Maryland Murder) and 2-206 (Maryland Attempted Murder), and the Common Law of Maryland, and punishable pursuant to Md. Code Ann., Crim. Law §§ 1-201, 2-204, 2-205, and 2-206.

   b. With respect to the murder of Yasmine Wilson on July 3, 2019, the base offense level is **43** pursuant to U.S.S.G. § 2A1.1(a).

   c. With respect to the attempted murder of Latonya Hayes on July 12, 2015, the base offense level is **33** pursuant to U.S.S.G. § 2A2.1(a) because the object of the offense constituted first-degree murder. There is a **4-level enhancement** pursuant to U.S.S.G. § 2A2.1(b)(1)(B) because the victim sustained life-threatening bodily injury. The adjusted offense level is therefore **37**.

   d. With respect to the attempted murder of Duane Coleman on May 16, 2016, the base offense level is **33** pursuant to U.S.S.G. § 2A2.1(a) because the object of the offense constituted first-degree murder. There is a **4-level enhancement** pursuant to U.S.S.G. § 2A2.1(b)(1)(B) because the victim sustained life-threatening bodily injury. The adjusted offense level is therefore **37**.

   e. Pursuant to the grouping rules set forth in U.S.S.G. § 3D1.4(c), the combined offense level is **45.**

   f. This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. §3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional **1-level** decrease, in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. §3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. §3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offenses; (iii) gives conflicting statements about the Defendant's involvement in the offenses; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

   8. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a

part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

### Joint Recommendation Regarding Sentence

9.  The parties agree and stipulate that a sentence in the range of **300 to 424 months imprisonment** is an appropriate disposition of this case.

### Obligations of the Parties

10. At the time of sentencing, this Office will recommend a sentence of not more than 424 months in the custody of the Bureau of Prisons. The Defendant will recommend a sentence of not less than 300 months in the custody of the Bureau of Prisons. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Forfeiture

11. The Defendant understands and agrees that, as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm or ammunition.

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

13. The Defendant agrees to consent to the entry of such an Order of Forfeiture and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

14. The Defendant agrees to assist fully in the forfeiture of any such property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

15. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil

or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (a) this Office will be free from its obligations under this Agreement; (b) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, and (c) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the sentencing range agreed and stipulated to herein.

### Waiver of Appeal

18. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent such challenges legally can be waived.

   b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term or condition of supervised release, or order of forfeiture) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, or term or condition of supervised release).

19. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned case and agrees not to file any request for documents from this Office or any investigating agency.

### Court Not a Party

20. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

21. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties, and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

                Sincerely,

                Erek L. Barron
                United States Attorney

By: _____
       Peter J. Martinez
       Ari D. Evans
       Patricia C. McLane
       Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12-7-23
Date

Barak Olds
Barak Olds

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/7/23
Date

Paul Hazlehurst, Esq.

Rev. August 2018

## ATTACHMENT A
## STATEMENT OF FACTS

*The undersigned parties stipulate and agree that, if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Black Guerilla Family, also known as "Jamaa" or "J," is a nationwide gang operating in prisons and on the streets of various cities throughout the United States. Founded in California in the 1960s, BGF first appeared in the Maryland correctional system in the 1990s. Although nominally still a prison gang, BGF has long been involved in criminal activity, including murder, murder for hire, robbery, drug trafficking, obstruction of justice and witness tampering throughout communities in Baltimore City.

The Defendant, Barak Olds, was a member of BGF throughout the period of the charged conspiracy in this case. The Defendant agreed to conduct and participate in BGF's affairs through a pattern of racketeering activity that included conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, robbery, and murder.

The Defendant agrees that the "Overt Acts" in which he is named in the Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

The Defendant admits that he participated in BGF meetings at an office leased by Safe Streets, a violence reduction program operated by Living Classrooms in collaboration with the city of Baltimore. Two BGF members who attended the meetings were employed by Safe Streets as "violence interrupters," *i.e.*, "trusted messengers" who were tasked with "encouraging positive changes in individual behavior." The Defendant admits that during the late spring and summer of 2015, he and other BGF members utilized the Safe Streets office in the 2300 block of East Monument Street as a de facto BGF clubhouse, where they stored drugs and firearms and plotted acts of violence on behalf of the gang.

The Defendant admits that in or about July 2015, he was directed by Co-Conspirator 1, a senior BGF member, to murder two victims, Latonya Hayes and Frederick Taylor, who had previously assisted Co-Conspirator 1 in stealing approximately 300 grams of heroin from a west Baltimore drug dealer. The Defendant carried out Co-Conspirator 1's directive on the evening of July 12, 2015, shooting Hayes in the head using a 9 mm handgun in the 2400 block of East Eager Street. Hayes suffered serious bodily injuries but survived. During the same incident, Co-Conspirator 2, who is now deceased, shot and killed Taylor.

Early the following morning, in the 900 block of East Monument Street, the Defendant and Co-Conspirator 3 robbed George Shorts at gunpoint. Following the robbery, the Defendant and Co-Conspirator 3 fled to the Safe Streets Office in the 2300 block of East Monument Street. Baltimore Police Officers located the Defendant, Co-Conspirator 3, and others in the Safe Streets office and obtained a warrant to search for evidence at that location. While executing the warrant, the officers recovered multiple firearms, as well as a portion of the heroin that Latonya Hayes,

1

Frederick Taylor, and Co-Conspirator 1 had stolen from the west Baltimore drug dealer, as discussed in the previous paragraph.

The Defendant further admits that on or about May 16, 2016, again at the direction of Co-Conspirator 1, the Defendant and Co-Conspirator 4 attempted to murder Duane Coleman in the 1800 block of North Caroline Street. Coleman was shot four times during the attack. He sustained life-threatening injuries but survived. The Defendant admits that Co-Conspirator 1 later received $8,000 as payment for the attack on Coleman from one of Co-Conspirator 1's drug suppliers. Co-Conspirator 1 shared portions of the payment with the Defendant and Co-Conspirator 4.

The Defendant further admits that on or about July 3, 2019, in the 400 block of North Rose Street, he shot and killed Yasmine Wilson. Wilson was pushing her infant daughter in a stroller at the time. The Defendant admits that he murdered Wilson because she was distributing narcotics in the 400 block of North Rose Street without obtaining permission from BGF.

SO STIPULATED:

_____
Peter J. Martinez
Ari D. Evans
Patricia C. McLane
Assistant United States Attorneys

_____
Barak Olds
Defendant

_____
Paul Hazlehurst, Esq.
Counsel for Defendant