**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **CRIMINAL No.:  JKB-22-cr-439** |
| **DAVANTE HARRISON** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENSE MOTION TO DISMISS
INDICTMENT OR IN THE ALTERNATIVE TO STRIKE SENTENCING
ENHANCEMENTS 6 AND 7 FOR VIOLATION OF THE PRESENTMENT CLAUSE**

COMES NOW the Defendant, Davante Harrison, through undersigned counsel, William B. Purpura and Stephen B. Mercer, in Reply to the Government's Response, and states as follows:

**INTRODUCTION**

The Government's central premise of the indictment is that the relationship between Harrison and Warren was about murder, not rap.  The Government points to a supposed "mountain of evidence" supporting its view, but its "parade of witnesses" is not the evidentiary lynchpin for its contention that Harrison hired Warren as a "hitman." (ECF #203, Gov't. Response, 2, 25).  The Government's central premise is based upon two purported direct messages between Harrison and Warren alleged in Overt Acts 20 and 22.  In the motion to dismiss, Harrison details how the Government either intentionally or through gross negligence altered Warren's message to Harrison in Overt Act 22 to make it appear that the message was about murder, not rap.  Also, the motion details how the Government incorrectly represented to the grand jury in Overt Act 20 that Warren sent a message to Harrison with a picture of himself holding an assault rifle accompanied by incriminating rap lyrics and a message, "Delete this after you see it."  (ECF #103, Motion to Dismiss, pp 1-7).

In its response, the Government concedes that it intentionally truncated "*I can do that rap shit no effort*" from Warren's message to Harrison in Overt Act 22 to further its theory of the case that their relationship was about murder, not rap.  (ECF 203, Gov't., Response, p. 22).  Moreover, the Government concedes that it omitted from Overt Act 20 that Keyshay sent the message and picture of Warren with an assault rifle to Harrison.  (ECF 203, Gov't. Response, p. 27).  In Overt Act 20, the Government replaced Keyshay's device information as the sender with the Government's inference masquerading as a fact that Warren sent the message and picture to Harrison.  (ECF 203, Gov't. Response, p. 25).  The Government tries mightily to downplay these messages as a "drop in a vast ocean" of other evidence and to trumpet its "parade of witnesses." Still, that purported mountain of evidence was not enough to dissuade the Government from altering Overt Acts 20 and 22 to convince the grand jury that the relationship was about murder, not rap.  In short, the Government effectively deprived the grand jury of the opportunity to draw their inferences from the evidence.

To be sure, the Government details the "voluminous evidence" that connects co-defendants Warren and Prince to the murders of Chanette Neal, Justice Allen, and Bryan McKemy.  The evidence includes witnesses, cooperators, surveillance footage, ballistics, cell phone and social media data.  Still, that same type and volume of evidence does not connect Harrison to the murders. Instead, the Government seeks to connect Harrison to the murders and to co-defendant Warren through the misleading allegations in Overt Acts 20 and 22.  Precisely because the allegations in Overt Acts 20 and 22 are essential to the grand jury's indictment of Harrison, the Government's material alteration and omission of the Instagram messages calls for dismissal of the indictment and alternatively, the sentencing enhancements (6 and 7).

## SENTENCING ENHANCEMENT FOR MURDER

As noted in the Motion to Preclude Evidence as set act in Overt Act 41 (ECF #110), the Defendant is already serving a fifteen-year sentence for a 2019 drug conspiracy and firearm in furtherance of a drug trafficking crime.  (CCB-19-0575). The only logical reason for including the Defendant in the present Indictment would be for his alleged participation in the April 4, 2018, murders of Chanette Neal and Justice Allen, and the August 7, 2018, Bryan McKemy murder. (ECF #1, Notice of Enhanced Sentencing 6 and 7). The critical portion of the Indictment for the Defendant who is already serving a lengthy sentence for conduct alleged in the present Indictment are the murders.

This is not civil litigation, where litigants often argue for the sake of argument.  In a case that appears to have overwhelming evidence against the co-defendants (with severance unlikely) and a District with 95% conviction rate, the accuracy of the information presented to a Grand Jury is of the utmost importance.  At best the Government made multiple critical errors, which are compounded by its denial in its Response. The inscription "*Qui Pro Domina Justitia Sequitur*" (who prosecutes on behalf of justice) is the motto that appears on the Department of Justice Seal. Justice is not served when clearly erroneous information is presented to the Grand Jury.

## OVERT ACT 20

**"On or about March 14, 2018, WARREN sent HARRISON a photograph that depicted WARREN brandishing an assault rifle. In a message accompanying the photograph, WARREN wrote, "I'm a young bitch with a lot of power don't make me shut down your hood." He then added: "delete after you see it.""**

Warren did not send the photograph to Harrison and Warren did not write the song lyrics. It is inconceivable how the Government would miss the original screen shot depicting Warren with a gun and the photo of Keyshay who snapped the screen shot.

3



The Government in its response admits that the phone number associated with the message is that of "Keyshay," a woman who has communicated with both Warren and Harrison. The Government states: "In his motion to dismiss, Harrison points out, **correctly** [emphasis added] that the message depicted above was sent from a cell phone number, 410-793-9164, that did not belong to Warren himself. The owner of that cell phone had communications with both Harrison and Warren during the winter and early spring of 2018. She is identified in Warren's contacts as 'Keyshay'." (ECF #203, Gov't. Response, p. 27).

**Lyrics, Dog in Me**

The Government without first attempting to call or simply email counsel on the origin of the questioned lyrics, opines after an apparent "Google search" that the lyrics do not exist. (ECF #203, Gov't. Response, p. 27). "Harrison contends that the message is a quotation from one of his rap songs, ECF 103 at p. 8, but a Google search (using the lyrics themselves, bounded by quotation marks) does not appear to bear that out." (ECF #203, Gov't. Response, p. 27). While the Government may have in "good faith" attempted a Google search for the lyrics, its conclusion is wrong. The song lyrics has its origin in the rap song "Dog in Me." This song was written by Harrison and posted on YouTube on August 5, 2017, seven months before the text. Keyshay changed one word in the lyrics substituting the "n" word (masculine) with "bitch" (feminine), thereby personalizing the lyrics.

> Song lyrics: "I'm a young **n…** with a lotta power don't make me shut down your hood."
> Text lyrics: "I'm a young **bitch** with a lotta power don't make me shut down your hood."

The Government is correct that the sender of the message, Keyshay, wrote the message in the first-person. A much more detailed analysis is set forth in Defense Motion to Dismiss (ECF #103, pp. 7, 8). For the Court's convenience, a portion of that Motion is set forth below:

> From a review of the discovery produced to date, the evidence contained therein tells a very different story. In sum, the photograph in question was **created by Keyshay**[1] (LNU) during a FaceTime call with Warren on February 8, 2018. Subsequently on March 14, 2018, it was **Keyshay,** not Warren, who texted to Harrison the photograph and added the rap music lyrics, and it was **Keyshay** who stated, "delete this after you see it."
>
> The events occurred as follows:
>
> Specifically, on **February 8, 2018**, at 6:01:52 p.m. EST,

---

[1] From the downloads of Harrison's and Warren's respective phones, Keyshay is a woman who appears to have engaged in a relationship with both men.

David Warren initiated a video call with Keyshay (LNU) using FaceTime. Warren initiated the call from his primary phone number 443-453-8277. The receiving phone number was 410-793-9164, a number associated with a woman named Keyshay as stored in Warren's phone contacts. The FaceTime call duration was 2 minutes, 43 seconds. The call was terminated at 6:04:35 p.m. EST (Ex. 5, Cellebrite, Extraction Report). During the FaceTime call, at 6:02:15 p.m. EST, Keyshay took a screenshot (.jpg format) of her and Warren speaking. The screenshot captured two images. The larger image is of Warren "brandishing an assault rifle" while laughing; the smaller image in the upper right-hand corner is Keyshay, also laughing, while lying on a pillow (Ex. 6: screenshot and Metadata reflecting date/time of screenshot).

On **March 14, 2018**, at 5:13 p.m. EST (Overt Act 20), a text message was sent to Harrison's phone (443-699-8109) by the phone number previously identified as a phone number associated with Keyshay (410-793-9164). The message contained in part the above-referenced screenshot of Warren with a rifle and select lyrics from one of Harrison's songs (Ex. 7).

Clearly, prior to the presentment to the Grand jury, the Government knew or should have known that it was Keyshay who captured the image of Warren with the assault rifle on February 8, 2018. That it was Keyshay and not Warren who forwarded the photo to Harrison on March 14, 2018, and it was Keyshay and not Warren who added the inflammatory rap music lyrics to the text message.

In discovery provided by the government from November 2, 2017, through April 18, 2018, there are 351 pages of text messages between Keyshay and Harrison containing approximately 1,053 text messages. Their messages and shared photographs/videos concerned attempts to get together as a couple and sharing their interest in rap music (Ex. 8 text messages between Keyshay and Harrison during March 2018.)

### OVERT ACT 22

**"On or about March 17, 2018, WARREN told HARRISON via Instagram that he was willing to commit additional acts of violence in order to become a member of HARRISON's inner circle. WARREN wrote; "More then[sic] willing to put it in for my spot…[t]he route Ima [sic] be in the can or gone[.] HARRISON responded, "Alreadyyy we going to get up."**

As noted in the Defense Motion to Dismiss and the Government's response, Warren was

known in the community as a violent offender, a contract killer and an aspiring but questionably talented rap artist.  The Government then, and now, believes that the connection between Warren and Harrison was for contract killings. The issue is that it intentionally edited an email to fit its theory and intentionally misrepresented that the text via Instagram represented confirmation from Warren that "he was willing to commit additional acts of violence in order to become a member of **HARRISON**'s inner circle."  The clear intent in editing the text message in Overt Act 22 was to mislead the Grand Jury regarding the Warren/Harrison connection.

For the convenience of the Court, a portion of the original Motion to Dismiss the Indictment is set forth below, ECF 103, pgs. 2-5.

The complete uncensored Instagram message from Warren to Harrison, Instagram Business Record, page 926 (Ex.2):

"More then willing to put in for my spot the route I'm going Ima be in the can or gone [,] **I CAN DO THAT RAP SHIT NO EFFORT**" (Emphasis on missing quote added).

In addition to the material misrepresentation of the actual text message, the government's representation as to the meaning of the text is also materially misrepresented. The preceding text messages via Instagram, from March 13-18, 2018, between Warren and Harrison, clearly demonstrate that Warren was reaching out to Harrison for his advice/help with rap music and NOT that he "was willing to commit additional acts of violence in order to become a member of Harrison's inner circle."

3/13/18, 12:44 pm, Warren to Harrison: Motivation

3/17/18, 7:44 pm, Harrison to Warren: <u>Straight like that!!</u>
3/17/18, 7:47 pm, Warren to Harrison: 💪🏾

communications to the grand jury.  The communications between Warren and Cannady are eerily like those between Warren and Harrison (Ex. 4):

4/11/18, 8:20 pm, Warren to Cannady:

Respectfully submitted,

/s/ *William B. Purpura*

_____

William B. Purpura, Esquire
Law office of Purpura & Purpura
8 E. Mulberry Street
Baltimore, Maryland 21202
Fed Bar No.: 00074
410.727.8550
wpurpura@purpuralaw.com

RaquinMercer LLC

/s/ *Stephen B. Mercer*

_____

Stephen B. Mercer, #12855
50 West Montgomery Ave., Ste 200
Rockville, MD 20850
Tel:     (301) 880-9260
Fax:     (833) 816-5605
Email: Steve@RaquinMercer.com

*Attorneys for Davante Harrison*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th of June, 2024, a copy of the foregoing reply was electronically filed in this case via the ECF system on all parties.

/s/ *Stephen B. Mercer*

By:   _____

Stephen B. Mercer #12855