

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Ari Evans* | *36 S. Charles Street* | *DIRECT: 410-209-4839* |
| *Assistant United States Attorney* | *Suite 400* | *MAIN: 410-209-4800* |
| *Ariel.Evans@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-3124* |

September 3, 2024

The Honorable James K. Bredar
United States District Judge
101 W. Lombard Street
Baltimore, Maryland 21201

> Re:     Sentencing in *United States v. David Warren*
>          Criminal No. JKB-22-439

Dear Judge Bredar:

The Defendant, David Warren, is scheduled for sentencing on September 17, 2024, at 2 p.m.[1]  Warren pleaded guilty to racketeering conspiracy and specifically admitted to being a co-conspirator in the brutal murder of three people and five separate attempted murders. Given the gravity of Warren's conduct, a sentence of **396 months' imprisonment** to run concurrently, and with credit for time served, to the sentence in *State of Maryland v. David Warren*, Baltimore County Circuit Court Case No. 03-K-18-004429, is sufficient, but not greater than necessary, to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

## I.      Factual Background

David Warren is a member of the Black Guerilla Family ("BGF"), a nationwide gang operating in prisons and on the streets of various cities throughout the United States. Founded in California in the 1960s, BGF first appeared in the Maryland correctional system in the 1990s. Although nominally still a prison gang, BGF has long been involved in criminal activity, including murder, murder for hire, robbery, drug trafficking, obstruction of justice and witness tampering throughout communities in Baltimore City.

As a member of BGF, Warren agreed to conduct and participate in BGF's affairs through a pattern of racketeering activity that included conspiracy to distribute controlled substances, possession with intent to distribute controlled substances, robbery, attempted murder, and murder.

Warren, along with five co-defendants, was indicted in this case with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  ECF No. 1.  He entered a guilty plea to the single-

---

[1] Prior to the sentencing hearing on September 17, 2024, the Government intends to file a list of victim witnesses who plan to speak at the hearing, written victim impact statements, and documentation supporting any requests for restitution.

count Indictment on July 10, 2024.  ECF No. 271.  As part of his Plea Agreement stipulated facts, he agreed that "Overt Acts" in which he is named in the Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.  ECF No. 271, Attachment A at 1.

Warren admitted that he participated in BGF meetings at an office leased by Safe Streets, a violence reduction program operated by Living Classrooms in collaboration with the city of Baltimore.  Two BGF members who attended the meetings were employed by Safe Streets as "violence interrupters."  During the late spring and summer of 2015, Warren and other BGF members utilized the Safe Streets office in the 2300 block of East Monument Street as a de facto BGF clubhouse, where they stored drugs and firearms and plotted acts of violence on behalf of the gang.

On May 27, 2015, Warren and other BGF members, acting at the direction of a senior BGF member, fired upon a group of rivals who were attending a candlelight vigil for a deceased rival, Darrell Alston, a/k/a "Nasty," near the intersection of North Rose and East Monument Streets. The shooting was ordered as a pre-emptive strike, as the senior BGF leader believed that the rivals were planning to attack BGF members that they believed to be behind the murder of Alston.  S.R. was shot during the attack at the candlelight vigil.  S.R.[2] sustained injuries but survived.  The attack was planned and coordinated at the Safe Streets Office in the 2300 block of Monument Street.  On July 13, 2015, Warren was present at the Safe Streets Office when Baltimore City Police Department officers executed a search warrant at the location, and recovered drugs, ammunition, and firearms, including a 9mm handgun that was determined to have been used in the candlelight vigil shooting on May 27, 2015.

Nearly one year later, Warren committed another act of violence on behalf of a senior BGF leader.  This time, on or about May 14, 2016, Warren, co-defendant Barak Olds, and an unindicted co-conspirator, conspired and attempted to murder D.C. in the 1800 block of North Caroline Street. D.C. was shot four times during the attack.  He sustained life-threatening injuries but survived. The senior BGF leader received an $8,000 payment for the attack on D.C. from one of his drug suppliers.  Warren, Olds, and the other co-conspirator received a portion of that payment for their services.

Two weeks later, on Memorial Day weekend, Warren struck again.  He traveled to the 4300 block of Old York Road in Baltimore with the intention of murdering T.M., a rival drug dealer. T.M. and others were attending a barbeque.  The Defendant fired at T.M. and hit four additional victims—J.W., B.L., A.W., and M.H.  The victims survived but sustained life-threatening injuries. Vitim J.W., a 61-year-old woman, identified Warren as the shooter.  One day later, Warren was arrested by BPD officers after discarding two loaded .40 caliber handguns.  Warren was charged in state court for the Memorial Day cookout shooting.  He went to trial and was acquitted.  He now accepts responsibility for the shooting.

Warren was released from prison in the fall of 2017.  In early 2018, co-defendant Davante Harrison, a/k/a "YGG Tay," a prominent Baltimore rapper, solicited Warren's services as a hitman to target his rivals.  Months of horrific bloodshed followed.  One of Harrison's rivals was J.A., a BGF member who burglarized Harrison's residence in November 2013.  On February 23, 2018,

---

[2] When referencing victims who are still alive, the Government refers to them in this memo by their initials, rather than their full names.

Warren and an unindicted co-conspirator attempted to murder J.A., who was sitting inside his parked vehicle in the 6700 block of Bonnie Ridge Drive.  J.A. was shot at multiple times; he survived the attack.  In the days leading up to the shooting, Warren exchanged text messages with an unindicted co-conspirator about J.A.'s whereabouts.  The co-conspirator provided Warren with J.A.'s location and the make, model, and partial license plate number of J.A.'s car.  Minutes after the attempted murder on February 23, 2018, Warren sent a text message that read, "Job √."

Warren and his co-conspirators also targeted two other rivals on behalf of Harrison—R.Be. and Ryan Brunson.  On April 2, 2018, Brunson and R.Be. went on Instagram "Live" and publicly accused Harrison of cooperating with law enforcement in connection with the burglary of his home in November 2013.  They accused Harrison of being a "rat."  Harrison publicly denied the accusation.  The retaliation was swift and brutal.  On April 4, 2018, Warren and unindicted co-conspirators sought to locate and murder R.Be. at a residence on Gorman Avenue in Baltimore occupied by R.Be.'s mother and sister, Chanette Neal and Justice Allen.  Allen was ordered to call her brother, but she could not reach him.  Neal and Allen were then executed in cold blood. Warren admits his involvement in that vicious double-murder.  The day of the shooting, Warren messaged a female associate that he was "waiting on the bag."  He now admits that he was later paid by Harrison.

Officers recovered .357 caliber shell casings at the scene of the murder.  Those casings were ballistically matched to a .357 Glock model 31 handgun recovered by law enforcement in October 2019.  Investigators later analyzed the cell phone that Warren used the day of the double murder.  The contents include a selfie-style photograph of Warren on a couch next to four firearms, including a green Glock resembling the Glock in the murders.  The metadata indicates that the photograph was taken after midnight on April 4, 2018, mere hours from the double murder perpetrated later that day.

 

On June 27, 2018, in the 8500 block of Glen Michael Lane in Randallstown, Maryland, Warren attempted to murder J.B. using a Glock 22 .40 caliber handgun.  J.B. survived but sustained

life-threatening injuries. In 2019, Warren pleaded guilty in the Circuit Court for Baltimore County to first degree assault and using a firearm during a crime of violence. *State of Maryland v. David Warren*, Baltimore County Circuit Court Case No. 03-K-18-004429. In connection with his guilty plea, Warren admitted that he used a .40 caliber Glock handgun in connection with the attempted murder of J.B. Warren was sentenced to 25 years, with all but 10 years suspended. He is currently serving a sentence for that shooting, which was alleged in Overt Act # 29 in the Indictment, *see* ECF No. 1, and which Warren now admits was done in furtherance of the racketeering conspiracy.

On August 7, 2018, Warren again conspired to commit another senseless murder on behalf of Harrison. That day, Warren, co-defendant Wayne Prince, and an unindicted co-conspirator drove to the 4500 block of Woodlea Avenue in Baltimore City with the intention of murdering Ryan Brunson. Brunson owned a home on that block that he was having renovated. A construction crew was on site at the time. Prince and the unindicted co-conspirator ran up to the back of the house and began firing their weapons, including a .40 caliber Glock handgun. They murdered one of the construction workers, Bryan McKemy. Another construction worker R.P. was shot in the head. He survived.

Warren admits that he participated in that murder conspiracy on behalf of Harrison. On the day of the shooting, Warren exchanged text messages with a female associate. The associate remarked, "got busy huh." Warren responded that he was "waiting on a bag," i.e., that he was expecting payment from Harrison for his role in facilitating the attack. Over the following three days – between August 7, 2018 and August 9, 2018 – Warren and Prince exchanged messages with a now-deceased member of Harrison's inner circle, in which they made arrangements to collect payment from Harrison for their role in the attack at Brunson's home.

Approximately, one week later, on August 16, 2018, law enforcement located Warren in a maroon Toyota Avalon, which was the suspect vehicle captured on a Ring camera at the scene of the murder on Woodlea Avenue. Inside the Avalon, law enforcement located a Glock 22 .40 caliber firearm located within a satchel. The firearm was ballistically tested. Law enforcement determined that it was the firearm used in connection with the murder of Bryan McKemy and non-fatal shooting of R.P. on August 7, 2018. In addition, law enforcement determined that the Glock had been used in a number of murders and non-fatal shootings in Baltimore City and Baltimore County between March and August 2018, including the attempted murder of J.B. on June 27, 2018 in Baltimore County (Overt Act #29). As mentioned above, Warren pleaded guilty in Baltimore County Circuit Court to that shooting. Warren has been in prison since his arrest on August 16, 2018.

## II. United States Sentencing Guidelines

The Government agrees with the Sentencing Guidelines calculated by the U.S. Probation Office. ECF No. 280. The base offense level for a violation of 18 U.S.C. § 1962(d) is the greater of 19 or the underlying racketeering activity. In this case, the underlying racketeering activities include multiple first-degree murders, which carry a base offense level of 43 pursuant to U.S.S.G. § 2A1.1(a), and multiple attempted murders resulting in life-threatening injuries, which carry an offense level of 37 pursuant to U.S.S.G. § 2A2.1(a) and 2A2.1(b)(1)(B). The PSR and Plea Agreement lay out the various racketeering offenses which result in those offense levels.

Pursuant to the grouping rules set forth in U.S.S.G. § 3D1.4, the Plea Agreement sets out the combined offense level as 47.[3]  The Government agrees that 3 levels should be reduced given Warren's acceptance of responsibility.  Since the total offense level would be more than 43, the final offense level is treated as 43.  U.S.S.G. Ch 5, Pt. A, app. note 2.

At an offense level of 43 and a criminal history category V, the advisory Sentencing Guidelines range is life.   As explained below, the Government and the Defendant are jointly recommending a downward-variant sentence.   Warren's decision to enter a plea and accept responsibility in this case is significant.  He has specifically admitted to involvement in multiple acts of violence that have gone unsolved for many years.   Moreover, the plea agreement in this case has allowed the Government to protect many cooperators who would have otherwise had to publicly testify at trial.

### III.    Analysis of the Relevant Factors Set Forth in 18 U.S.C. § 3553(a)

The United States believes that a variant sentence of 396 months' (33 years) incarceration, to run concurrently, and with credit for time served, to Warren's sentence in the Baltimore County case that he is presently serving, is sufficient, but not greater than necessary, under the factors set forth in 18 U.S.C. § 3553(a).

#### a.   Nature, Circumstances, and Seriousness of the Offense

The offense in this case could not be more serious.  Warren engaged in a conspiracy to murder three innocent people, none of whom had any connection to the violent, ongoing dispute between Harrison, Warren, and their rivals.  But that did not stop Warren.  He acted as a cold and calculating contract killer—accepting money in exchange for taking human life. Whether or not Warren himself pulled the trigger that resulted in the tragic deaths is of no moment.  He conspired with others and is responsible for the loss of life.

The Court already heard[4] and will hear again from the family of Bryan McKemy.  The loss they suffered at the hands of Warren and his co-conspirators is incalculable.  The hole in their lives from Bryan's death will never be filled.  The Court will also hear from the family of Chanette Neal and Justice Allen.  Their deaths were similarly tragic and utterly senseless.  Warren and his conspirators murdered them in cold blood simply because they were related to a rival that Harrison

---

[3] The Plea Agreement's combined adjusted offense level differs from the PSR, although both documents arrive at the same conclusion.  The parties failed to create a separate group for each victim, instead creating groups for each specific shooting incident even when there were multiple victims.  *See* ECF No. 271 at 4-6.  The grouping resulted in a combined offense level of 47.  *Id*. at 6.  The PSR broke out each victim into a separate group, which resulted in a combined offense level of 50.  *See* ECF No. 280, ¶ 100.  Regardless, under either scenario the total offense level is 43 pursuant to Chapter 5, Part A (comment n.2).

[4] Numerous members of Bryan McKemy's family and friends submitted Victim Impact Statements prior to the sentencing of co-defendant Wayne Prince.  *See* ECF No. 201, Ex. A.  A subset of those individuals provided oral statements to the Court at the sentencing hearing.

was paying them to kill.  Chanette and Justice deserved to live long lives alongside their loving family.  Warren deprived them of that, cruelly valuing a quick payday more than their lives.

Beyond those three murders, Warren has admitted to perpetrating a slew of non-fatal shootings on behalf of and in furtherance of BGF.  As described above, Warren and his co-conspirators shot and injured nine other victims.  That the victims survived does not negate the pain and suffering they experienced, nor does it significantly dimmish the seriousness of the offense.  By firing a deadly weapon, Warren either intended to kill or should have expected that he would kill the victims.  Their survival says nothing about Warren's malicious intentions.

Moreover, Warren admitted to shootings that took place ranging from 2015 through 2018, belying any argument that Warren's conduct could be confined to a brief phase of his life.  In reality, David Warren was not only a member of a violent gang; he was the point of the spear, perpetrating horrific acts of violence as a hired gun.  He and his conspirators devastated the community.  A significant sentence of 33 years is necessary to reflect the severity of his crimes.

### b.  History and Characteristics of the Defendant, Deterrence, and Public Protection.

David Warren has a long and extensive history with the criminal justice system.  The PSR details his six criminal convictions, spanning from a juvenile conviction in 2007 at the age of 15 through a dangerous weapon conviction in prison in 2021.  In terms of his serious offenses, Warren was convicted in 2013 with armed robbery and in 2019 with first degree assault for the aforementioned shooting of J.B. that was alleged and admitted to as an Overt Act in the instant conviction.

However, Warren's convictions do not tell the full story.   The PSR catalogues the approximately 40 times that Warren was arrested, and the charges were dismissed or where prosecutors entered a nolle prosequi.  ECF No. 280, ¶¶ 116-156.  He was charged on *three* separate occasions with attempted murder.  In 2011 and 2013, prosecutors decided not to go forward on attempted murder charges.  *Id*. at ¶¶ 133, 144.  And in 2017, Warren went to trial on the aforementioned 2016 Memorial Day cookout shooting and was acquitted on all counts.  He now admits his involvement in that attack.

For too long, Warren evaded true accountability.  It was not until his conviction in 2019 in Baltimore County that Warren faced significant consequences for his violent conduct.  He has now admitted to involvement in numerous shootings from 2015 through 2018.  He has clearly not been deterred and a significant sentence is necessary to achieve specific deterrence. Warren's record and his conduct in this case demonstrate that the public must be protected from him for a significant period of time.  Moreover, a lengthy sentence is necessary to achieve general deterrence—the public must understand that the Court will treat seriously the grave misconduct admitted to in this case.  The Court can send a clear message that when gang members are convicted in this Court of violent conduct, they will not receive a slap on the wrist, but a significant sentence of incarceration.

### c. Need to Avoid Unwarranted Sentencing Disparities.

Warren has five co-defendants, two of whom have already been sentenced by the Court. On May 21, 2024, the Court sentence Wayne Prince to a period of incarceration of 336 months (28 years) for his conviction on the RICO conspiracy count. ECF No. 215. Prince admitted to being one of the trigger pullers who killed Bryan McKemy. On July 9, 2024, the Court sentenced Davante Harrison, a/k/a "YGG Tay," to a period of incarceration of 300 months (25 years). ECF No. 267. The most serious conduct admitted to by Harrison was paying a co-conspirator in 2014 to murder a rival. A period of incarceration of 396 months (33 years) for Warren is reasonable in light of those sentences and the admitted conduct. Warren is the lead defendant in this case and has admitted to the most serious misconduct.

## IV.   APPLICATION OF U.S.S.G. § 5G1.3

Section 5G1.3(b) of the Sentencing Guidelines provides that if a defendant is serving a term of imprisonment for an offense that is "relevant conduct to the instant offense of conviction" then the "court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons." Here, the Government agrees that the shooting of J.B. for which Warren is currently serving a term of imprisonment for a Baltimore County conviction is considered "relevant conduct" to the instant offense of conviction. Indeed, the Government alleged that shooting as an Overt Act in the Indictment and Warren has admitted responsibility for the shooting.

Warren has been serving his term of imprisonment for that shooting since his arrest on August 16, 2018. It is the parties' expectation that Warren's imprisonment from that date through the sentencing in the instant case will not be credited to Warren's federal sentence by the Bureau of Prisons. 18 U.S.C. § 3585(b)(1) instructs that a defendant only receive credit for time served that "has not been credited against another sentence." Since the time from August 16, 2018 through Warren's sentencing in this case is being credited towards Warren's state sentence, BOP will likely not credit that time for purposes of Warren's federal sentence. Accordingly, the parties agreed to recommend that the Court adjust Warren's federal sentence to account for that 73-month period. In other words, the overall sentence of 396 months should be adjusted downward by 73 months to account for the period of time between August 16, 2018 and September 17, 2024 (the date of the federal sentencing), resulting in a final sentence of 323 months. Warren's federal sentence should then run concurrently to the remainder of the undischarged term of imprisonment on the state conviction.

## V.   CONCLUSION

For these reasons, the Government respectfully submits that a variant sentence of 396-months' imprisonment, to run concurrently and with credit for the 73 months already served, to the sentence in *State of Maryland v. David Warren*, Baltimore County Circuit Court Case No. 03-K-18-004429 would be sufficient, but not greater than necessary, to achieve the purposes of sentencing under Section 3553(a).

Respectfully Submitted,

Erek L. Barron
United States Attorney

/s/
_____

Ari D. Evans
Patricia C. McLane
Kim Y. Hagan
Assistant United States Attorneys